## Russell Smith v. Ohio Valley Electric Railway Company.

## Russell Smith, Jr. v. Same.

(Decided February 24, 1928.)

## Appeals from Boyd Circuit Court.

1. Street Railroads.—Motorman of interurban electric car approaching turn in town street had duty to keep lookout and to have car under reasonable control.

2. Street Railroads.—Motorman of interurban electric car approaching turn in town street had right to assume that automobile approaching from opposite direction would turn around curve with street and permit passage of street car, where there was ample room between street car tracks and curb.

3. Street Railroads.—Motorman of interurban electric car approaching automobile, which had skidded onto tracks in attempting to round turn in town street, was only required to exercise such reasonable care as persons of ordinary prudence and presence of mind would have exercised under like circumstances.

4. Street Railroads.—Where interurban electric car struck automobile which had skidded onto tracks in rounding turn in town street, automobile driver and another occupant, to recover for collision, were bound to show that motorman after discovering peril could have stopped street car with means at hand in time to avoid collision.

5. Street Railroads.—Evidence to show that motorman of interurban electric car was negligent held insufficient to warrant submission to jury, where car struck automobile which had skidded onto tracks at turn in town street.

PRICHARD, MALIN & SMITH for appellants.

MARTIN & SMITH for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming in first case, and motion for appeal overruled in second case.

These two suits grew out of a collision between an automobile owned and operated by appellant, Russell Smith, and an electric car owned by the appellee, Ohio Valley Electric Railway Company. The appellee operates an interurban traction line between Ashland, Ky., and Huntington, W. Va. The collision out of which this litigation arose occurred in the town of Kenova, W. Va., at a point where the street turns sharply to the right. The appellant, Russell Smith, accompanied by his wife and son, Russell Smith, Jr., who was then 4 years of age, and Mr. and Mrs. Robert Keffer, left Ashland on the morning of November 15, 1925, intending to go to Charleston, W. Va. When appellant, Russell Smith, turned to the right at the point where the accident occurred, he observed a street car approaching from the opposite direction. He applied his brakes and attempted to turn the automobile to the right, but it skidded and came to a stop at an angle of approximately 45 degrees to the street, with the rear wheels on the railroad track. The street at this point is 30 feet wide and paved with brick. The street car tracks are near the center of the street, the south rail being 12 or 15 feet from the south curb of the street. It was raining at the time, and the street and car tracks were wet and slippery. The electric car struck the automobile, but stopped within 18 inches or 2 feet after the collision. The automobile was damaged, and the appellant, Russell Smith, Jr., was injured, his face being badly cut by broken glass.

Russell Smith brought an action in the Boyd circuit court against the railway company seeking to recover $321.85 for damages to his car and expenses incurred for his injured child, and Russell Smith, Jr., by his father as his next friend, brought an action for $2,750 for personal injuries sustained by him. The two cases were tried together, and at the conclusion of plaintiffs' evidence the trial court sustained defendant's motion for a directed verdict in each case. It is insisted for the appellants that there was sufficient evidence to take the cases to the jury, and that the trial court erred in directing verdicts for the defendant.

The only witnesses who testified as to the manner in which the accident occurred were the occupants of the automobile. The appellant, Russell Smith, testified that when his automobile came to a stop on the railway tracks the street car was approaching at a distance of 50 to 75 feet. Mrs. Smith estimated the distance at a car length and a half, Mrs. Robert Keffer at 75 to 100 feet, and Robert Keffer at 40 to 60 feet. The automobile when it rounded the curve was traveling at the rate of 10 or 15 miles an hour, but the only estimate of the speed of the street car was that given by the appellant, Russell Smith, who said its speed was slow. All of the witnesses stated that the motorman made no effort to stop the street car, so far as they could observe, until immediately before the collision occurred. The motorman was in the front vestibule of the car, and the witnesses admitted they could not see his hands or feet, nor was any evidence introduced to show where the appliances on the car used for the purpose of setting the brakes or cutting off the power were located nor whether they were operated by the motorman with his hands or feet, nor was it shown that the motorman, after discovering appellants' peril could, with the means at hand, have stopped the car in time to avoid the collision. At the place where the collision occurred it was the duty of the motorman to keep a lookout and to have his car under reasonable control. There is no evidence that he was not keeping a lookout, and there are no facts or circumstances from which it could be reasonably inferred that such lookout was not kept. The only testimony as to the rate of speed at which the street car was traveling when the automobile stopped on the tracks was that it was slow, and the fact that it stopped within 18 inches or 2 feet after the collision would indicate both that the motorman was keeping a lookout and that he had it under reasonable control.

When the automobile came around the curve in the street, the motorman had the right to assume that it would turn to the right and permit the street car to pass since there was ample room between the street car tracks and the south curb of the street. When it suddenly skidded and stopped on the tracks directly in front of the approaching street car, the two vehicles were from 40 to 100 feet apart. At the most but a few seconds would be required for the street car to traverse the intervening space, and the motorman was confronted by an emer-

gency that required prompt action on his part to bring his car to a stop.

In Kentucky Traction & Terminal Co. v. Roschi's Administrator, 186 Ky. 371, 216 S. W. 579, the facts were very similar to the facts in this case, and we there said:

> "The defendant, through its motorman in charge of the car, was only required to exercise such reasonable care as persons of ordinary prudence and presence of mind would have exercised under like circumstances, and to hold that this evidence shows any negligence upon the part of the motorman would be necessarily upon the hypothesis that the company was liable if he failed in any degree to exercise the utmost care possible by immediately comprehending the whole situation and losing not a second in the performance of every duty imposed upon him by a sudden emergency."

In Kentucky Traction & Terminal Co. v. Brackett, 210 Ky. 756, 276 S. W. 828, plaintiff's automobile left the road and ran upon defendant's railroad tracks in front of an approaching car. The car at the time was several hundred feet away, and the evidence for the plaintiff tended to show that the street car could have been stopped within 125 or 150 feet after the brakes were applied, and one witness testified that she did not see the motorman do anything in the way of attempting to stop the car. In the course of the opinion we said:

> "To sustain this judgment, it was necessary for Brackett to show that after his peril was discovered, the defendant's motorman could, with the means at hand, have stopped his car in time to have avoided striking the automobile. He failed to prove this."

The facts in the instant case clearly bring it within the rules announced in the Roschi and Brackett cases and, the plaintiffs having failed to establish negligence on the part of the defendant, the trial court did not err in sustaining defendant's motion in each case for a directed verdict.

In Russell Smith v. Ohio Valley Electric Railway Co., the motion for an appeal is overruled, and in Russell Smith, Jr., by Next Friend v. Ohio Valley Electric Railway Co., the judgment is affirmed.